JOSEPH TIERNEY ET AL., APPELLEES, V. ANDREW R. OLESON ET AL, APPELLANTS.

FILED NOVEMBER 14, 1911. No. 17,048.

1. **Mortgages:** FORECLOSURE: CONFIRMATION OF SALE: SUIT TO SET ASIDE: BURDEN OF PROOF. In a collateral action to set aside an order confirming a sheriff's sale under a decree of foreclosure and the deed executed in compliance with such order, for the reason that the order was obtained fraudulently in violation of the plaintiff's rights, and contrary to a verbal agreement not to ask for such confirmation, if the allegations of plaintiff's petition are

denied by the answer, the burden is upon the plaintiff to prove the allegations of his petition by a preponderance of the evidence.

2. Evidence examined, its substance stated in the opinion, and *held* insufficient to sustain a judgment for the plaintiff.

APPEAL from the district court for Cuming county: GUY T. GRAVES, JUDGE. *Reversed with directions.*

*A. R. Oleson* and *John A. Ehrhardt*, for appellants.

*Clinton Brome* and *O. C. Anderson*, contra.

BARNES, J.

Action in the district court for Cuming county to vacate and set aside an order confirming a sale of real estate made under a mortgage foreclosure decree, and to cancel the sheriff's deed made to the purchaser. The plaintiffs had the judgment, the defendants have appealed, and the case is now before this court for a trial *de novo* upon the record and bill of exceptions.

It sufficiently appears that on or about the 21st day of May, 1904, one John Tierney, Sr., conveyed by warranty deed to his daughter, Anna Cunningham, the south half of the southeast quarter of section 25, and the northeast quarter of the northeast quarter of section 36, township 24, range 6 east, in Cuming county, Nebraska, which he then owned in fee simple, subject to a mortgage to the Security Mutual Life Insurance Company for $3,000, reserving to himself an annuity therein of $300 a year during the remainder of his life; that Anna Cunningham and her husband, Martin, went into possession of the land and performed their part of the agreement; that they mortgaged the premises to John Tierney, Sr., for the sum of $300; that the plaintiffs in this action, who are children of John Tierney, Sr., were dissatisfied with their father's disposition of his property, and in June, 1906, commenced an action in the county court of Cuming county to have their father declared incompetent, and for the appointment of a guard-

ian of his person and estate, in order to lay a foundation for setting aside his deed to the Cunninghams; that a long and tedious period of litigation ensued, in which Andrew R. Oleson, the principal defendant herein, acted as attorney for John Tierney, Sr., and the Cunninghams, and, to pay him for his services, they gave him their two promissory notes, aggregating $750, secured by a mortgage upon the land above described; that, for a failure to pay the mortgage above mentioned, Oleson commenced an action in the district court for Cuming county, and in November, 1908, obtained his decree of foreclosure; that thereafter the land was duly appraised, advertised and sold by the sheriff of Cuming county to defendant Oleson; that the proceedings in that action were regular and valid in all respects, and thereafter Oleson was entitled to an order confirming the sale at any time he should make application therefor. It further appears that while the action for the appointment of a guardian of the person and estate of John Tierney, Sr., was still pending upon an appeal to the district court for Cuming county, and on the 25th day of January, 1909, one H. C. Brome, acting as attorney for the plaintiffs herein, who were the plaintiffs in the proceeding for the appointment of a guardian, as above stated, went to Wisner and entered into an agreement with Martin and Anna Cunningham, which provided, in substance, that the Cunninghams were to sell the land in question, and out of the proceeds were first to pay the mortgage liens above mentioned, and, second, to the plaintiffs herein the sum of $3,125, and the balance, if any arising from such sale, was to be retained by the Cunninghams; that 60 days were given Cunningham in which to make the sale, and, if he should fail to do so, then the plaintiffs were to have an opportunity to sell the premises upon the same conditions, and, as a consideration for the agreement, plaintiffs were to dismiss the proceeding for the appointment of a guardian for John Tierney, Sr. The above mentioned agreement was afterwards typewritten by

defendant Oleson at the request of the parties thereto, but it seems clear that Oleson took no other part in that transaction.

It was alleged by the plaintiffs, as a basis of their right of action in this case, that, when the agreement above described was concluded, it was further agreed between H. C. Brome (as attorney for the plaintiffs) and the defendant Andrew R. Oleson that Oleson would not ask for a confirmation of sale until after the February term of court; that the defendant Oleson, in violation of his agreement, and in fraud of the rights of plaintiffs, and without notice to them, obtained a decree of confirmation and a sheriff's deed to the premises in question, which the plaintiffs in this action ask to have set aside, declared void and canceled. On the other hand, defendant Oleson, by his answer, denied that he ever made any agreement in relation to the matter with the plaintiffs by and through their attorney, H. C. Brome, and alleged that at the time when the agreement first above mentioned was concluded he informed the parties thereto that he would not postpone his application for a confirmation of sale indefinitely, but, in order to accommodate his former clients, the Cunninghams, he would not ask for a confirmation of sale at the February sitting of the court, which was to begin immediately thereafter, and on the 1st day of February, 1909; that he positively declared that he would make no arrangement whatever with attorney Brome or the plaintiffs herein; that, according to his promise made to the Cunninghams, he refrained from asking for a confirmation of sale at the February sitting of the district court, and made no application therefor until more than 60 days had elapsed, in order to give his former clients an opportunity to sell the premises and carry out the terms of their agreement with the plaintiffs.

It appears that the district court adjourned at the conclusion of its February sitting, which was of short duration, until the 10th day of May, 1909; that in the

latter part of March, and more than 60 days after the agreement between the plaintiffs and the Cunninghams was entered into, Oleson saw the Cunninghams, who were the only persons who had the right to redeem the land in question from the foreclosure sale, and inquired how the matter of sale was progressing; that Martin Cunningham then informed the defendant Oleson that he had been unable to sell the land, that his time limit had expired, and he had nothing further to do with the matter; that Oleson then informed him that he should ask for a confirmation of sale at his first opportunity; that, when court convened on the 10th day of May following, defendant Oleson obtained the first order of confirmation, and on the following day the sale was confirmed, a deed was ordered, which was made by the sheriff, and was thereafter placed on record by the defendant Oleson.

It thus appears that the only question for determination in this case is whether or not the defendant Oleson made the agreement with plaintiffs' attorney, H. C. Brome, as alleged in their petition, and upon this issue the burden of proof rests upon the plaintiffs to establish the making of that agreement by a preponderance of the evidence.

It appears from the record and bill of exceptions that upon that issue the plaintiffs produced Mr. Brome as a witness, who testified, in substance, that, when the agreement between his clients and the Cunninghams was completed, he said to Mr. Oleson: "Now, I understand you have a mortgage decree, and sale has been made and not confirmed on this property. Mr. Cunningham tells me that you are perfectly willing to wait until we sell this property for your money; that the sale won't be confirmed until we make this arrangement, and I want this understood between us," that Mr. Oleson said, "that would be all right." He further stated that there was no other conversation between them about the confirmation.

On the other hand, it appears that, by his testimony,

Mr. Oleson positively denied that he ever had any such conversation with, or made any such statement to, Mr. Brome. He further testified that he had no conversation or agreement of any kind with Mr. Brome relative to the confirmation at all. He further stated, in substance, that, when the printing of the contract was completed, Mr. McGuire, who was present, asked him to withhold confirmation of sale for Mr. Cunningham, and that he told McGuire and Cunningham, who was also present, that he would withhold confirmation in abeyance over the February sitting of the court. That he said to Cunningham: "Martin, if you ask it, I will for you, but I will not, under any circumstances, for the other parties. * * * I want you to understand that this is not going to be indefinite." That Cunningham said to him: "It won't be long, because I think we will close the sale up inside of 30 days." That he then said to him: "I will pass it over the February sitting of the court, so you will have your opportunity to make arrangements that you are now contemplating." That the February term of court convened on the 1st day of February, 1909; that he did pass the confirmation over that sitting of the court. He further stated that about the latter part of March, somewhere about the expiration of the 60-day period mentioned in the contract, he saw Mr. Cunningham in town, and asked him how he was getting along with the sale of that land; that Cunningham said: "I haven't been able to sell it. We have tried and have had a number of buyers for it, but for some reason or another they won't buy or close the deal." That he then said to Martin: "If that is the way it is going to hang on, I am not going to wait much longer for the confirmation of that sale." That Cunningham replied: "I have done everything I can. Now, my time is up, and I have nothing more I can do with it. It goes over to the other parties." That he then said to Cunningham: "Martin, I shall ask for confirmation at the first opportunity." Cunningham said: "I can't help it. It has

gone beyond me. I was unable to sell it, and I have tried very hard." That he then said to Cunningham: "I don't intend to wait until somebody or other gets * * * into the matter. I made arrangements with you, and I want to carry them out." That Cunningham said: "You have done everything I asked you. I can't do anything further. I am out of it. * * * That is the substance of the conversation."

Mr. McGuire, by his testimony, corroborated the testimony of Mr. Oleson. It also appears that the plaintiffs took the deposition of Martin Cunningham to maintain the issues on their part, but did not offer it in evidence on the trial. It was read in evidence by the defendants to support their view of the case, and it fully corroborates the testimony of Mr. Oleson. It appears, without dispute, that, when the district court convened again on the 10th day of May, 1909, Oleson moved for a confirmation of the sale, and the court made the first order to show cause by the following morning why the sale should not be confirmed. No cause was shown, the sale was confirmed, and the deed ordered. It further appears, without dispute, that no notice of the motion to confirm the sale other than that of the first order was given to the plaintiffs, and that, as a matter of fact, they did not know until some time after the order of confirmation was entered that the sale had been confirmed.

There was other testimony in the case upon other questions, but the foregoing comprises the substance of all of the evidence introduced by either party upon the main issue. As we view the record, the plaintiffs failed to sustain the allegations of their petition by a preponderance of the evidence, and therefore the judgment of the district court was wrong and should be reversed.

It may be further said that the record discloses that the land was sold subject to the mortgages of the Security Mutual Life Insurance Company and John Tierney, Sr.; that, after the order of confirmation was entered the

proceeds of the sale were distributed, and, after the payment of costs, there remained a surplus in the hands of the court amounting to $1,468.70, which was paid to and receipted for by the defendants Martin and Anna Cunningham.

It may be further said that there is nothing in the record to show that the land was sold for an inadequate price; and, while some evidence was produced which tended to show that the land at the time of the trial was worth about $12,000, still there was no offer on the part of the plaintiffs to pay that sum for it. Neither was it shown that there was any reasonable prospect of their selling the land for any amount in excess of the sum bid for it at the sheriff's sale.

We gather from the record that it would be useless to send this case back to the district court for a new trial, for it seems clear that no other or further evidence can be produced by either party.

For the foregoing reasons, the judgment of the district court is reversed, and the plaintiffs' action as against the defendants Andrew R. Oleson, Helen Oleson, Martin Cunningham and Anna Cunningham is hereby dismissed; and it appearing that the defendant the Security Mutual Life Insurance Company has prayed that its mortgage be not foreclosed, but that it only be declared a first lien upon the land in question, it is so found, and the action is dismissed without prejudice to any of its future rights. It further appearing that defendant John Tierney, Sr., has not asked for a foreclosure of his mortgage, the action as to him is dismissed without prejudice to the right to maintain a future foreclosure suit.

JUDGMENT ACCORDINGLY.

SEDGWICK, J., dissenting.

John Tierney, Sr., had a farm in Cuming county, which is said by one of the witnesses to be worth $12,000, and he also had several lots in Scribner. There was a mortgage on the farm of $3,000, so that Tierney's in-

terest in it was not worth more than $8,000 or $9,000. Tierney had several children. One of them, Anna, was the wife of Martin Cunningham. In May, 1904, Tierney deeded the farm to his daughter, Anna Cunningham, and reserved an annuity of $300 to himself. This would be about one-third of 10 per cent. of the value of Mr. Tierney's interest in the farm. This annuity was to be continued only during the life of Mr. Tierney, who was quite an aged man, so that the transaction was virtually a gift of the farm to Anna, to the exclusion of his other children. His other children then filed a petition in the county court to have a guardian appointed for Mr. Tierney. This proceeding was evidently with the view of testing the validity of the deed to Anna and their exclusion from their father's property. It was eventually before this court, and was remanded to the district court for Cuming county for trial, and had been tried in the district court for Cuming county before a jury, when the contract that is involved in this litigation was made. The jury apparently found that Mr. Tierney was competent to take care of himself, but did not find that he was competent to take care of his property, and it appears that this question was about to be tried again, when this contract was made. Mr. Oleson acted for Anna and Martin Cunningham in their litigation, and, of course, in their interest appeared for Tierney to prevent his being held incompetent. On the 25th day of January, 1909, Mr. Brome, who was attorney for the other children of Tierney, went out there, and the parties appear to have gotten together, and a settlement of the whole matter was entered into. Mr. Oleson claims that he took no part in making the settlement but he does not claim that it was made clandestinely. He was notified of it; in fact, he wrote the contract on the typewriter, so that he knew just exactly what settlement they were making. The contract they made was to the effect that Cunningham should pay the other heirs $3,125 as their interest in the land, and the other heirs were to dismiss the pro-

ceedings in the district court, where the matter was being
contested, and release all their claims to the land. The
Cunninghams were to sell the land, and the contract
provided that they should do so within 60 days, and pay
the other claims against the land, the $3,125 to their
brothers and sisters, and that they, the Cunninghams,
should have the remainder. If the Cunninghams did not
sell the farm within 60 days, the contract provided that
the other children should have the right to sell the land
for the sum of $12,000, and out of the proceeds pay the
liens and their $3,125, and the balance to the Cunning-
hams. The next term of the district court, after this
agreement, was to take place within ten days or two
weeks. Mr. Oleson testified that at the time this con-
tract was written by him on the typewriter, and before it
was executed, while the parties were there in his office
together, Mr. Cunningham told him (Oleson) what they
had agreed to do. He had conversation with Mr. Cun-
ningham and Mr. McGuire, who was present. Mr. Oleson
had obtained a decree of foreclosure of his mortgage for
attorney's fees against this farm given by the Cunning-
hams, and the farm had been sold a few days before this
contract at sheriff's sale, but the sale was not yet con-
firmed. Mr. Oleson testified that McGuire mentioned to
him the matter of holding the decree of confirmation in
abeyance when they were making this contract in Ole-
son's office, and Oleson says: "I stated that, if Mr.
Cunningham wished it, I would hold the confirmation in
abeyance over the February sitting of the court." Mr.
Cunningham said: "Well, I guess I will ask it." 'And
Oleson said: "Martin, if you ask it, I will for you, but I
will not, under any circumstances, for the other parties;
but Martin, I want you to understand that this is not
going to be indefinite." Mr. Oleson's case depends upon
this transaction. It will be remembered that the con-
tract of settlement provided that Cunningham should
have 60 days in which to make the sale, and afterwards
his brothers and sisters might sell the land for $12,000,

and that this settlement was impossible unless Oleson would forbear to insist upon the confirmation, and that Cunningham might make this contract and settlement. Oleson agreed that he would forbear, but not indefinitely, to ask for a confirmation. Oleson's construction of it is that he would wait for Cunningham to see if he could sell it, and, if Cunningham could not sell it, then he would be at liberty, with Cunningham's consent, to have his sale confirmed. Acting upon this understanding, and about the time the 60 days expired, Oleson asks Cunningham if he has made the sale, and Cunningham tells him he has not, and that he cannot do so, and Oleson has his sale confirmed and pays to Cunningham $1,400. When this contract was made, and in pursuance of it, Oleson applied to the district court and had the proceedings for the guardianship against Tierney dismissed on the ground that the contract which the parties had entered into was a complete settlement of the whole matter. Thus Oleson and Cunningham get the proceedings against them dismissed. They get the entire farm. Cunningham gets $1,400 out of it, Oleson gets the farm, and the other heirs get nothing.

Evidently Oleson is mistaken in supposing that by his agreement to delay the confirmation he placed himself under obligation to his client Cunningham only. He knew what the parties were agreeing to do, and that those who were contesting with his clients would not enter into this contract if the sale was to be confirmed without their knowledge, and so as to give the entire property to Oleson and his client, without giving them an opportunity to avail themselves of that part of the agreement that was in their interest, Oleson agreed to the entire contract and so became a party to it; and whether it was at the request and for the benefit of his client, Cunningham, or for his own benefit, or both, would make no difference. His mortgage was given by the Cunninghams. Oleson's interest in the property depended upon the validity of the deed from Tierney to

Anna Cunningham. That deed was being contested, and it was a part of the contract of settlement, to which Oleson agreed, that this contest should be dismissed and the title perfected so that the terms of the contract of settlement might be carried out. Oleson procured the dismissal of this contest, which he could not have done except under the terms of the contract of settlement, and then proceeded upon a secret agreement between himself and his client, and without any notice to the other parties to the settlement, to confirm his foreclosure sale and procure the whole property for himself and his client. Cunningham, he says, told him that he could not find a purchaser for the farm; but Cunningham had never notified the other parties to the agreement of settlement of this fact. By the terms of the agreement the other parties were to have an opportunity to sell the farm after Cunningham had failed to make such sale. Oleson and Cunningham should have frankly told the other parties that Cunningham could not make the desired sale of the property, and so give them an opportunity to make such sale. The contract of settlement expressly provided for this, and Oleson and his client violated the contract by depriving the other party of an opportunity to sell the farm as the contract provided.

I think the judgment of the trial court was right.